IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INNOVATIVE GLOBAL SYSTEMS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 19-641-MN |
| | ) | |
| KEEP TRUCKIN, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**BRIEF IN SUPPORT OF DEFENDANT KEEP TRUCKIN, INC.'S MOTION TO
DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
amayo@ashbygeddes.com

*Attorney for Defendant*

*Of Counsel:*

Michael J. Zinna
David G. Lindenbaum
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY  10178
(212) 808-7800

Constantine Koutsoubas
KELLEY DRYE & WARREN LLP
333 West Wacker Drive, 26th Floor
Chicago, IL  60606
(312) 857-7070

Dated:  July 1, 2019

{01464436;v1 }

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................ 1

II.   BACKGROUND ............................................................................................. 3

      A.    Nature and Stage of the Proceedings ................................................. 3

      B.    The '277 and '384 Patents ................................................................. 3

III.  LEGAL STANDARDS .................................................................................. 4

      A.    Standard for a Motion to Dismiss ..................................................... 4

      B.    Patentable Subject Matter Eligibility Under 35 U.S.C. § 101 ............ 5

IV.   ARGUMENT .................................................................................................. 7

      A.    Step One: At Their Core, the Claims Are Directed to Abstract Ideas ................. 7

            1.    The '277 Patent's Claims Are Directed to Abstract Ideas ........................ 7

            2.    The '384 Patent's Claims Are Directed to Abstract Ideas ....................... 12

      B.    Step Two: There Is Nothing More in the Claims That Could Transform
            Them Into Patent Eligible Claims ...................................................... 14

            1.    The '277 Patent's Claims Do Not Recite Elements that Amount to
                  More Than the Core Abstract Idea to Which the Claims are
                  Directed ............................................................................... 15

            2.    The '384 Patent's Claims Do Not Recite Elements that Amount to
                  More Than the Core Abstract Idea to Which the Claims are
                  Directed ............................................................................... 17

V.    CONCLUSION ............................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013)................................................................................................7

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014)................................................................................................ *passim*

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................................4

*Automated Tracking Sols., LLC v. Coca-Cola Co.*,
  723 F. App'x 989 (Fed. Cir. 2018).....................................................................6, 9, 18

*In re Bilski*,
  545 F.3d 943 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593
  (2010).....................................................................................................................5

*Bilski v. Kappos*,
  561 U.S. 593 (2010)......................................................................................................5

*Blackbird Tech LLC v. Advanced Discovery Inc.*,
  C.A. No. 16-413-GMS, 2017 U.S. Dist. LEXIS 98045 (D. Del. June 26, 2017).....................5

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997)..........................................................................................4

*Credit Acceptance Corp. v. Westlake Servs.*,
  859 F.3d 1044 (Fed. Cir. 2017)...............................................................................6, 16

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011)................................................................................8, 13

*Dealertrack, Inc. v. Huber*,
  674 F.3d 1315 (Fed. Cir. 2012)................................................................................8, 13

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014)........................................................................................11

*Elec. Power Group, LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016).................................................................................11, 15

*Funk Bros. Seed Co. v. Kalo Inoculant Co.*,
  333 U.S. 127 (1948)..................................................................................................2

*Genetic Techs. Ltd. v. Merial LLC*,
  818 F.3d 1369 (Fed. Cir. 2016)..............................................................................4

*Innovative Global Systems, LLC v. Blue Tree Systems, Inc.*,
  1-19-cv-00642 (D. Del) ...........................................................................................3

*Internet Patents Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015)..........................................................................7, 14

*Jedi Techs., Inc. v. Spark Networks, Inc.*,
  C.A. No. 16-1055-GMS, 2017 U.S. Dist. LEXIS 122313 (D. Del. Aug. 3, 2017) ..................4

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*,
  566 U.S. 66 (2012)...................................................................................................5

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
  811 F.3d. 1314 (Fed. Cir. 2016)............................................................................10

*Move, Inc. v. Real Estate All., Ltd.*,
  721 F. App'x 950 (Fed. Cir. 2018)........................................................................15

*OIP Techs., Inc. v. Amazon.com, Inc.*,
  788 F.3d 1359 (Fed. Cir. 2015)..............................................................................4

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
  855 F.3d 1322 (Fed. Cir. 2017)............................................................................11

*Reese v. Sprint Nextel Corp.*,
  Nos. 2018-1971, 2018-1972, 2018-1973, 2018-1974, 2018-1975, 2019 U.S.
  App. LEXIS 17238 (Fed. Cir. June 10, 2019) ......................................................14

*SAP Am., Inc. v. InvestPic*,
  LLC, 898 F.3d 1161 (Fed. Cir. 2018) ............................................................ *passim*

*Synopsys, Inc. v. Mentor Graphics Corp.*,
  839 F.3d 1138 (Fed. Cir. 2016)..........................................................................2, 10

*TDE Petroleum Data Sols., Inc., v. AKM Enter., Inc.*,
  657 F. App'x 991 (Fed. Cir. 2016)........................................................................11

*In re TLI Commc'ns LLC Patent Litig.*,
  823 F.3d 607 (Fed. Cir. 2016)............................................................................6, 9

*TriPlay, Inc. v. WhatsApp Inc.*,
  No. 13- 1703-LPS-CJB, 2018 U.S. Dist. LEXIS 49953 (D. Del. Mar. 27,
  2018) ....................................................................................................................................4

*Two- Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017)...........................................................................................14

**Statutes**

35 U.S.C. § 101 ...................................................................................................... *passim*

**Other Authorities**

Rule 12(b)(6).....................................................................................................................3, 4

## I.      INTRODUCTION

In this patent case, Plaintiff Innovative Global Systems, LLC's ("IGS") alleges that Defendant Keep Truckin, Inc. ("Keep Truckin") infringes one or more claims of U.S. Patent Nos. 8,032,277 ("the '277 Patent") and 10,157,384 ("the '384 Patent") (collectively, the "Patents-in-Suit").  D.I. 1 at ¶¶ 89 – 91.  The Patents-in-Suit both relate generally to in-cab electronic logging devices ("ELD") and systems for using ELDs which log and report driver activity and operation data.  *Id.* at ¶¶ 32, 36.  This data can include a truck driver's GPS position, miles driven, driver performance data and other information. *Id.*  The Complaint accuses Keep Truckin's ELD of infringing the Patents-in-Suit because the device records this type of information.  D.I. 1 at ¶ 56.[1]

Keep Truckin moves to dismiss the Complaint under Fed. R. Civ. Prod. 12(b)(6) because the claims of the Patents-in-Suit are directed to the abstract idea of logging and reporting data, rendering the claims ineligible for patent protection in accordance with 35 U.S.C. § 101.  The Patents-in-Suit utilize conventional computer components to accomplish the age-old tasks of logging and reporting data, which is not enough to make the otherwise abstract claims patent-eligible under the two-step test articulated by the U.S. Supreme Court in *Alice Corp. v. CLS Bank*.

The patents themselves acknowledge that commercial drivers have been legally required to log, report and display data about their activities for over 80 years.[2]  The '277 Patent states that, "[i]n 1937, the federal government imposed hours-of-service (HOS) regulations upon

---

[1] The Complaint also alleges that Keep Truckin's customers are direct infringers of the '277 Patent.  D.I. 1 at ¶ 79.

[2] The '277 Patent and '384 Patent are attached to the Complaint as Exhibit A and Exhibit B, respectively.

commercial motor vehicle drivers operating commercial vehicles." The '277 Patent at 1:18-21. These regulations "prohibit drivers from operating or being forced to operate their vehicles more than a specified amount of time between mandatory off-duty periods." *Id.* at 1:30-34. Of course, the recordation and reporting of the data would have originally been done by hand, using a paper log. The Patents-in-Suit admit this and acknowledge that, even today, using a traditional paper log would be a suitable way to achieve the same result the patents seek to achieve, particularly if the patented system malfunctions. *See* the '277 Patent at 4:6-7, the '384 Patent at 7:23-24 (notifying the driver to log operating data on a paper log if the recorder is malfunctioning). Indeed, Figure 6 of each patent includes an example log that could be filled out using a traditional writing implement. A driver could collect the requested data, record the data on a paper log as depicted in Figure 6 or a similar chart, and report the results via means such as posting the log on the outside of the vehicle or sending the log to a third party by regular mail. Courts have found that when patent claims are directed to ideas that can be performed with paper and a writing implement, those claims recite abstract ideas that are not patent eligible. *See, e.g., Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1139, (Fed. Cir. 2016) (claims to the mental process of ''translating a functional description of a logic circuit into a hardware component description of the logic circuit'' are directed to an abstract idea, because the claims ''read on an individual performing the claimed steps mentally or with pencil and paper'').

   This is the case here. Logging and reporting data are fundamental activities that have been repeatedly found to be patent-ineligible. The U.S. Supreme Court has said that the collection, storage, organization and display of data is "part of the storehouse of knowledge of all men" which cannot be made proprietary under the patent laws of the United States. *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948). It is also well-settled after the

Supreme Court's decision in *Alice Corp.* that using general purpose computer components to perform tasks electronically rather than manually is not enough to turn an abstract idea into a patent eligible one.

Keep Truckin therefore respectfully requests that the Court dismiss the Complaint in its entirety under Rule 12(b)(6) because the claims of the Patents-in-Suit are directed to patent ineligible subject matter under 35 U.S.C. § 101.

## II.     BACKGROUND

### A.     Nature and Stage of the Proceedings

Plaintiff filed the Complaint against Keep Truckin on April 8, 2019.  This motion is Keep Truckin's first response to the Complaint.  On the same date that Plaintiff filed the Complaint, Plaintiff also filed a Complaint in this Court against Blue Tree Systems, Inc., alleging infringement of the Patents-in-Suit.  *See Innovative Global Systems, LLC v. Blue Tree Systems, Inc.*, 1-19-cv-00642 (D. Del).  Plaintiff also filed a lawsuit against NexTraq, LLC in the Northern District of Georgia on November 14, 2018, alleging infringement of the '277 Patent and another patent not at issue in this case.  *See Innovative Global Systems, LLC vs. NexTraq, LLC*, 1-18-cv-05241 (N.D. Ga).  That case has been terminated.

### B.     The '277 and '384 Patents

The '277 Patent issued on October 4, 2011, and is entitled "Driver Activity and Vehicle Operation Logging and Reporting."  The '384 Patent issued on December 18, 2018, and is entitled "System for Logging and Reporting Driver Activity and Operation Data of a Vehicle." The two patents are in the same family and both claim priority to U.S. Patent Application No. 11/203,280, filed on August 15, 2005.

### III.    LEGAL STANDARDS

#### A.    Standard for a Motion to Dismiss

"A motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (citing *Bartholomew v. Fischl*, 782 F.2d 1148, 1152 (3d Cir. 1986)). To survive a Rule 12(b)(6) motion, a claim must have "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Like other legal questions based on underlying facts, [questions of patent eligibility] may be, and frequently ha[ve] been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *SAP Am., Inc. v. InvestPic*, LLC, 898 F.3d 1161, 1166 (Fed. Cir. 2018) ("SAP America"). Courts have "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369 (Fed. Cir. 2016). "Addressing 35 U.S.C. § 101 at the outset . . . conserves scarce judicial resources and spares litigants the staggering costs associated with discovery and protracted claim construction litigation." *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1364 (Fed. Cir. 2015).

Where the asserted patent does not meet the requirements of patent eligibility under 35 U.S.C. § 101, this District has granted motions at the pleading stage dismissing complaints with prejudice. *See, e.g., TriPlay, Inc. v. WhatsApp Inc.,* No. 13- 1703-LPS-CJB, 2018 U.S. Dist. LEXIS 49953, at *29-30 (D. Del. Mar. 27, 2018) (granting motion to dismiss based on § 101 invalidity); *Jedi Techs., Inc. v. Spark Networks, Inc.*, C.A. No. 16-1055-GMS, 2017 U.S. Dist.

LEXIS 122313, at *33 (D. Del. Aug. 3, 2017) (granting motion to dismiss based on § 101

invalidity); *Blackbird Tech LLC v. Advanced Discovery Inc.*, C.A. No. 16-413-GMS, 2017 U.S.

Dist. LEXIS 98045, at *16 (D. Del. June 26, 2017) (granting-in-part motion to dismiss certain

claims).

### B.       Patentable Subject Matter Eligibility Under 35 U.S.C. § 101

35 U.S.C. § 101 provides that "[w]hoever invents or discovers any new and useful

process, machine, manufacture, or composition of matter, or any new and useful improvement

thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."

The U.S. Supreme Court "ha[s] long held that [§ 101] contains an important implicit exception:

Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd.*

*v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (quoting *Ass'n for Molecular Pathology v.*

*Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)).  As discussed above, mental processes are also

"'part of the storehouse of knowledge of all menn. . . free to all men and reserved exclusively to

none.'" *Bilski v. Kappos*, 561 U.S. 593, 602 (2010) (quoting *Funk Bros. Seed Co. v. Kalo*

*Inoculant Co*., 333 U.S. 127, 130 (1948)). "Whether a claim is drawn to patent-eligible subject

matter under [35 U.S.C.] § 101 is a threshold inquiry." *In re Bilski*, 545 F.3d 943, 950 (Fed. Cir.

2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010).  A patent claim that covers patent-

ineligible subject matter "must be rejected even if it meets all of the other requirements of

patentability." *Bilski*, 545 F.3d at 950.

The U.S. Supreme Court has explained that the "framework for distinguishing patents

that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-

eligible applications of those concepts" involves two inquiries. *Alice*, 134 S. Ct. at 2355; *see also*

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012).

In the first step, a court "determine[s] whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 134 S. Ct. at 2355. *See also SAP America*, 898 F.3d at 1167-68.  In the second step, "[the court] then ask[s], '[w]hat else is there in the claims before [it]?'" *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 566 U.S. at 78).  The Supreme Court has described the second step of this analysis as "a search for an 'inventive concept' – i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon [the abstract idea] itself.'" *Id*. (quoting *Mayo*, 566 U.S. at 78) (brackets in original).  But transformation of an idea into a patent-eligible application requires "more than simply stating the abstract idea while adding the words "apply it.'" *Alice*, 134 S. Ct. at 2357 (quoting *Mayo*, 566 U.S. at 72).  Indeed, "applying" the use of general purpose computers or conventional components that do not require any particular configuration or specialized arrangement to perform abstract ideas is insufficient to pass the test of an inventive concept.  *See Automated Tracking Sols., LLC v. Coca-Cola Co.*, 723 F. App'x 989, 994 (Fed. Cir. 2018); *see also, SAP America*, 898 F.3d at 1170.  The "mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea" where the components do not "involve more than performance of well-understood, routine, conventional activities previously known to the industry."  *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613-614 (Fed. Cir. 2016) (internal quotations omitted).  Also, providing "communication between previously unconnected systems . . . does not amount to an improvement in computer technology." *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017).

In addition, claims are not deemed to be patent eligible simply because they apply the recited functions to a particular environment, for example, logging and reporting trucking

industry data specifically.  *See Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) ("[Patentee's] attempts to limit the abstract concept to a computer implementation and to a specific industry . . . do not provide additional substantive limitations to avoid preempting the abstract idea of [the system claim].").

## IV.    ARGUMENT

### A.    Step One: At Their Core, the Claims Are Directed to Abstract Ideas

In step one, "the claims are considered in their entirety to ascertain whether their *character as a whole* is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)(emphasis added).  This is the case here.

#### 1.    The '277 Patent's Claims Are Directed to Abstract Ideas

That the claims of the '277 are directed to unpatentable subject matter is evident from the claims' express terms.  The '277 patent has 13 claims, of which claims 1 and 2 are independent. Claim 1 is directed to "[a]n electronic device for logging and reporting driver activity and vehicle operation . . ." as stated in its preamble. The '277 Patent at 14:60-61.  Claim 2, from which all other claims depend, is directed to "[a] method for logging and reporting driver activity and vehicle operation . . .," as stated in its preamble. *Id.* at 15:16-18.  Claims 1 and 2 are expressly identified in the Complaint as being infringed and are illustrative of the claims' character as a whole.  Claim 1 recites nothing more than generic computer hardware being used to log and report data.[3]  Claim 1 reads:

> 1. [preamble] *An electronic device for logging and reporting driver activity and vehicle operation*, comprising:
>
> [1a] *a memory device* configured to store operating data;

---

[3] Reference numbers (e.g. "(1b)") are added to the claim limitations throughout this paper for ease of reference.

[1b] *a power supply*;

[1c] *a first interface* configured to connect to a vehicle mileage sensing system;

[1d] *a second interface* configured to connect to a data bus of the vehicle;

[1e] *a receiver* configured to link with a global navigation satellite system;

[1f] *at least one data portal* configured to upload data from the memory device to a receiver external to the vehicle using a wireless telecommunications network, and supporting a connection with a receiver external to the vehicle and under control of authorities;

[1g] *a driver interface* configured to record driver identification information input by a driver of the vehicle and duty status input by the driver;

[1h] *a processor* operatively connected to the memory device for processing encoded instructions and recording data selected from a group consisting of operating data, an hours of service log, and a fuel tax log; and

[1i] *a display*.

The '277 Patent at 14:60-15:15 (emphasis added).

The character of Claim 1 as a whole is very clearly directed to the abstract idea of logging and reporting driver activity and vehicle operation using conventional computer components. This is not enough for patent eligibility. As the Federal Circuit has noted, "collecting information, including when limited to particular content (which does not change its character as information), is within the realm of abstract ideas." *SAP America*, 898 F.3d at 1167 (internal quotations and citations omitted); *see also Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1331-34 (Fed. Cir. 2012) (finding a "computer aided method" including steps of "receiving" and "forwarding" data insufficient to satisfy § 101); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011) (finding the "mere collection and organization of data" insufficient to satisfy § 101).

Plaintiff does not contend that it invented any of the components recited in Claim 1 — not the memory device of element 1(a), not the power supply of element 1(b), not the interfaces

configured to connect to a vehicle mileage system, a data bus of a vehicle or a global navigation system of elements 1(c) – 1(e), not the data portal of element 1(f) configured to upload data, not the driver interface of element 1(g), not the processor of element 1(h), and not the display of element 1(i).  Claim 1 recites these components according to their known functions—the memory stores data, the first and second interface and the receiver may connect to sources of information, the data portal is configured to upload data and support a connection with a receiver, the driver interface records information, the processor processes instructions and records data, etc.  *See TLI Communs. LLC,* 823 F.3d at 612 ("The specification fails to provide any technical details for the tangible components, but instead predominately describes the system and methods in purely functional terms.")

Further, the components recited in Claim 1 are not organized in any specific arrangement to form a device that has a particular structure.  *See Automated Tracking Sols., LLC v. Coca-Cola Co.,* 723 F. App'x 989, 994 (Fed. Cir. 2018) (claims deemed invalid under Section 101 because they did not require any particular configuration or specialized arrangement of conventional RFID components).  For example, the interfaces recited in elements 1(c) and 1(d) are not necessarily connected to anything—they are merely "configured" to connect.  The data portal of element 1(g) is merely "configured" to upload data, and the driver interface of element 1(g) is merely "configured" to record.

Turning to Claim 2, this claim is simply directed to a method of logging and reporting driver activity:

> 2. [preamble] *A method for logging and reporting driver activity and vehicle operation,* comprising:
>
> [2a] *identifying a driver* of a vehicle;
>
> [2b] *recording operating data with an electronic device* operatively connected to a data bus of the vehicle, coupled to a vehicle mileage sensing system, and linked

to a global navigation satellite system, the operating data being selected from a group consisting of mileage obtained from at least one of the vehicle mileage sensing system and the data bus; engine use, time, and date obtained from the vehicle data bus; and location, time, and date obtained from the global navigation satellite system;

[2c] *recording a duty status of the driver*;

[2d] *creating an hours of service log* comprising data selected from a group consisting of a change in duty status of the driver, time and date the change occurred, hours within each duty status, total hours driven today, total hours on duty for seven days, and total hours on duty for eight days; and

[2e] *automatically uploading the hours of service log to a receiver* external to the vehicle using a wireless telecommunications network.

As with Claim 1, the overall character of Claim 2 is directed to the abstract idea of logging and reporting driver activity.  At its core, Claim 2 covers identifying a driver (element 2a), recording data (element 2b), recording more data (element 2c), compiling the data into a log (element 2d), and transmitting the log so it can be viewed outside of the vehicle (element 2e), all of which can be done by a human using paper and a writing implement.  This is not enough for patent eligibility.  *See Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1139, (Fed. Cir. 2016) (holding that claims to the mental process of 'translating a functional description of a logic circuit into a hardware component description of the logic circuit are directed to an abstract idea, because the claims read on an individual performing the claimed steps mentally or with pencil and paper); *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d. 1314, 1324 (Fed. Cir. 2016) (holding that computer-implemented method for anonymous loan shopping was an abstract idea because it could be performed by humans without a computer).

The remaining claims of the '277 Patent, Claims 3 - 13, all depend from Claim 2 and do not make the abstract idea at the core of Claim 2 any less abstract.  Claim 3 recites that the vehicle data bus is selected from one of a few types of data buses.  Claims 4 recites destinations where the collected information can be sent.  Claims 5, 6 and 7 depend from and put a finer point

on Claim 4, by each reciting a specific destination for the collected information.  Claims 8 - 11 recite downloading driver-related data from a wireless network to a recorder, wherein the data is biometric data, then comparing the data to biometric data from the driver and disabling the vehicle if the driver is not logged into the recorder. Claim 12 requires that the information being sent about the vehicle is safety information.  Finally, Claim 13 puts a finer point on Claim 12 by specifying that the safety information must be information about the vehicle's tire pressure.  All of these dependent claims continue the abstract idea of "logging and reporting driver activity and vehicle operation" at the core of Claim 2.

"[M]erely selecting information, by content or source, for collection, analysis, and display does nothing significant to differentiate a process from ordinary mental processes, whose implicit exclusion from § 101 undergirds the information-based category of abstract ideas." *Elec. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353-55 (Fed. Cir. 2016) ("collecting information, analyzing it, and displaying certain results of the collection and analysis" is within the realm of abstract ideas); *TDE Petroleum Data Sols., Inc., v. AKM Enter., Inc.*, 657 F. App'x 991, 993 (Fed. Cir. 2016) ("claims generally reciting collecting information, analyzing it, and displaying certain results of the collection and analysis are a familiar class of claims directed to a patent-ineligible concept.") (internal quotations omitted).  Claims that recite the ideas of "taking existing information . . . and organizing this information into a new form" are directed to abstract ideas. *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014); *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326-1327 (Fed. Cir. 2017) ("A process that start[s] with data, add[s] an algorithm, and end[s] with a new form of data [is] directed to an abstract idea.").

### 2.     The '384 Patent's Claims Are Directed to Abstract Ideas

Similar to the '277 Patent, the unpatentable abstract "character as a whole" of the '384 Patent's claims is also clear from the language of those claims.  The '384 Patent contains 20 claims, of which claims 1, 13, and 14 are independent.  The preambles of each of these claims state plainly that they are directed to electronic systems for logging and reporting driver activity and operation data of a vehicle.  *See* the '384 Patent at 23:7-9, 24:24-26, and 25:1-3.  Claim 1 is expressly identified in the Complaint as being infringed and is representative of the claims' character as a whole.

> 1. [preamble] An onboard *electronic system for logging and reporting driver activity and operation data of a vehicle*, said system comprising:
>
> [1a] *an onboard recorder* adapted for continuously connecting to a data bus of the vehicle *to continuously monitor, obtain and calculate vehicle operation data* comprising mileage data, engine use data, time the engine is turned off, speed of the vehicle, and time the engine remains on while the vehicle is not moving, and said onboard recorder comprising a processor, a transmitter, and a memory device for recording and storing said vehicle operation data;
>
> [1b] said *transmitter adapted for transmitting said vehicle operation data* from said onboard recorder to a portable handheld communications device;
>
> [1c] data processing software operable on the handheld communications device comprising a processor and a display, said *data processing software utilized to generate a hours of service log using said vehicle operation data continuously monitored, obtained and calculated* from the data bus of the vehicle, and to present the hours of service log in a grid form on the display, the hours of service log comprising a driver's total hours driven today, total hours on duty today, total miles driven today, total hours on duty for seven days, total hours on duty for eight days, and the driver's changes in duty status and the times the duty status changes occurred, whereby the driver's hours of service log is applicable for comparison to a hours of service regulation to determine a compliance status of the driver; and
>
> [1d] a *compliance signal emitted by said transmitter and indicating whether said onboard recorder is functioning to record vehicle operation data needed to generate the driver's hours of service log*, such that the compliance status of the driver can be accurately determined, and in the event of a malfunction of said onboard recorder, said compliance signal is adapted for activating a visual

indicator to the driver signifying an out-of-compliance condition of said
onboard recorder.

The '384 Patent at 23:7-45 (emphasis added).

The character of Claim 1 as a whole is directed to the abstract idea of logging and

reporting data.  The same arguments espoused *supra* regarding the '277 Patent apply here.  As in

the '277 Patent, the '384 Patent does not purport to have invented any of the individual pieces of

the system. The "inventive" concept here is simply performing a task electronically that could

otherwise be performed with pen and paper, and which the patent *admits* can be performed with

pen and paper.  The '277 Patent at 4:6-7.  This does not rise to the level of patentable subject

matter.  *See SAP America*, 898 F.3d at 1167; *Dealertrack, Inc.*, 674 F.3d at 1331-34;

*CyberSource*, 654 F.3d at 1370.

The general character of the other independent claims is equally directed to the abstract

idea of logging and reporting driver activity and operation data of a vehicle.  Claim 13 is largely

a carbon copy of Claim 1 but adds two features that are inconsequential for the purposes of the

step one analysis: a cable connection to the memory device in the onboard recorder, to allow for

a wired connection rather than a wireless connection, and a self-test button to ensure that the

recorder is working properly. The '384 Patent, 24:36-28; 24:66-67.  Claim 14 is a carbon copy of

Claim 1, other than that the preamble expressly states that a commercial motor vehicle

incorporates the claimed system. The '384 Patent, 25:1.

The remaining claims of the '384 Patent do not make the abstract idea at the core of

Claims 1, 13, and 14 any less abstract.  Instead, these claims just advance the abstract concept of

logging and reporting data.  Claims 2 and 15 recite the same interfaces in the '277 Patent, which

connect to the vehicle mileage sensing system, the vehicle data bus, and the global navigation

satellite system.  Claims 3 and 16 recite a data portal used to upload data.  Claims 4, 5, 17, and

18 also recite interfaces used simply to record data.  Claims 6 and 20 recite that the connection between the onboard recorder and the vehicle data bus is a wired connection.  Claim 7 requires specifically that a biometric reader is used to verify the identity of the driver.  Claim 8 recites a portable memory device reader used to store driver identity data. Claim 9 recites a camera.  Claim 10 recites that the portable handheld communication device recited in Claim 1 is specifically a tablet.  Claims 11 and 19 recite that the connection to and from the memory device is a wired connection.  Claim 12 recites a self-test button, which is supposed to "initiate operability testing" of the onboard recorder, but there is no disclosure in the patent describing how that test would be accomplished.

The core of the claims remains directed to logging and reporting data which, again, are activities that have been performed with pen and paper in the commercial vehicle industry for more than three quarters of a century.  *See Internet Patents*, 790 F.3d at 1346 ("the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter.").

B.     **Step Two: There Is Nothing More in the Claims That Could Transform Them Into Patent Eligible Claims**

In step 2 of the Section 101 analysis, courts must "look to both the claim as a whole and the individual claim elements to determine whether the claims contain an element or combination of elements that is sufficient to ensure that the patent in practice amounts to *significantly more* than a patent upon the ineligible concept itself."  *Reese v. Sprint Nextel Corp.,* Nos. 2018-1971, 2018-1972, 2018-1973, 2018-1974, 2018-1975, 2019 U.S. App. LEXIS 17238, at *8-10 (Fed. Cir. June 10, 2019) (emphasis added) ("Reciting an abstract idea and applying it on telephone network equipment is not enough for patent eligibility"); *see also Two- Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017) (question is

"whether the additional elements transform the nature of the claim into a patent-eligible application of the abstract idea").

Much of the step one discussion above is also relevant here. The claims of the '277 and '384 Patents are directed to nothing more than abstract concepts of logging and reporting driver activity and operation data of a vehicle. The independent claims of both patents all identify components of a general purpose computer such as processors, memory, displays, and data stores. Each of those generic computer components are used in the patents the same way they are commonly used. But implementing an abstract idea on a general purpose computer or using conventional components does not make the abstract idea eligible for patenting. *See Move, Inc. v. Real Estate All., Ltd.*, 721 F. App'x 950, 957 (Fed. Cir. 2018) ("Where '[t]he claim language does not provide any specific showing of what is inventive about the [limitation in question] or about the technology used to generate and process it,' we have concluded that the claims do not satisfy *Alice's* second step"). Indeed, "invocations of computers and networks that are not even arguably inventive are insufficient to pass the test of an inventive concept …" *Elec. Power Grp.*, 830 F.3d at 1355. In other words, "performance of the claimed [tasks of] information collection, analysis, and display functions 'on a set of generic computer components' and display devices" is insufficient to supply an inventive concept. *Id.* (quoting *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016)).

### 1. The '277 Patent's Claims Do Not Recite Elements that Amount to More Than the Core Abstract Idea to Which the Claims are Directed

As noted above, Claim 1 of the '277 Patent recites a "memory device" (element 1a), a "power supply" (element 1b), interfaces to a vehicle mileage system, a data bus of a vehicle or a global navigation system (elements 1c - 1e), a "data portal" (element 1f), a "driver interface to record driver identification information" (element 1g), a processor (element 1h), and a display

(element 1i).  All of these elements are either generic computer components (e.g., memory, power supply, data portal, computer interface, processor, display) or they are conventional elements merely described in functional terms in the patent (e.g. interfaces to collect and record information).  Taken together, they do not convert the abstract idea recited in Claim 1 to a patent eligible invention.  *See, e.g., Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1056 (Fed. Cir. 2017) ("The use and arrangement of conventional and generic computer components recited in the claims—such as a database, user terminal, and server—do not transform the claim, as a whole, into 'significantly more' than a claim to the abstract idea itself.").

Claim 2 of the '277 Patent involves the steps of identifying a driver [2a], recording data [2b], recording more data [2c], compiling the data into a log [2d], and uploading the log [2e]. There is simply no "'inventive concept' – i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon [the abstract idea] itself.'" *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 566 U.S. at 78).

Nor are there any elements recited in the dependent claims that would transform the abstract idea into a patent eligible invention.  Claim 3 simply recites that the vehicle data bus is selected from one of a few types of data buses.  Claims 4 merely recites destinations where the information is wirelessly transmitted.  Claims 5 - 7 depend from Claim 4 and recite with specificity the type of device the data may be transmitted to: a handheld device, a host server or an electronic tablet.  Claims 8 - 11 recite downloading driver-related data from a wireless network to a recorder, wherein the data is biometric data, then comparing the data to biometric data from the driver and disabling the vehicle if the driver is not logged into the recorder. Claim 12 requires that the information being sent about the vehicle is safety information.  Finally, Claim 13 simply adds further specificity to Claim 12 by requiring that the safety information

must be information about the vehicle's tire pressure.  All of the dependent claim limitations continue the abstract idea of "logging and reporting driver activity and vehicle operation."

All of the claims should therefore be held invalid.

### 2. The '384 Patent's Claims Do Not Recite Elements that Amount to More Than the Core Abstract Idea to Which the Claims are Directed

The claims of '384 Patent are similarly patent ineligible.  Representative Claims 1 and 14[4] simply recite an onboard recorder (element 1a), a transmitter (element 1b), data processing software on a handheld communications device (element 1c) and a signal emitted from the transmitter that indicates whether the system is functioning (element 1d).  The elements are recited using language describing the functions they are intended to perform, namely logging and reporting driver activity and operation data of a vehicle, in a manner consistent with the standard use for these hardware components.  The onboard recorder of element 1a is adapted for continuously connecting to a data bus of the vehicle to continuously *monitor, obtain and calculate*" data.  The '384 Patent at 23:10-15.  The onboard recorder includes a processor, a transmitter, and a memory device for *recording and storing vehicle operation data*.  *Id.* at 23:15-18.  The transmitter is adapted for *transmitting said vehicle operation data* from said onboard recorder to a portable handheld communications device. *Id.* at 23:19-21.  The data processing software is utilized to *generate a hours of service log* using said vehicle operation data and to *present the hours of service log* in a grid form on the display.  *Id.* at 23:22-38.  None of these elements confer patent eligibility.

The claims that depend from Claims 1 and 14 fare no better.  Claims 2 and 15 recite the same interfaces discussed above for the '277 Patent which simply connect to the vehicle mileage

---

[4] As noted *supra* at page 13, Claim 14 contains the identical claim elements of Claim 1, except that the preamble specifies a commercial motor vehicle incorporates the claimed system.

sensing system, the vehicle data bus, and the global navigation satellite system.  The '384 Patent at 23:46-52, 26:7-13.  Similarly, Claims 4, 5, 17, and 18 also recite interfaces used to record data. *Id.* at 23:58-64, 26:19-25.  Those interfaces are conventional interfaces that merely support logging of data by the onboard recorder.  The remaining elements are conventional components such as data portals, wired connections, a biometric reader, a memory device reader, a camera, and a tablet.  Claims 3 and 16 recite a data portal used to upload data.  *Id.* at 23:54-57, 26:14-18. Claims 6 and 20 recite that the connection between the onboard recorder and the vehicle data bus is a wired connection.  *Id.* at 23:65-67, 26:30-32.  Claim 7 recites a biometric reader used to verify the identity of a driver.  *Id.* at 24:1-3.  Claim 8 recites portable memory device reader used to store driver identity data. *Id.* at 24:4-8. Claim 9 recites a camera.  *Id.* at 24:9-11.  Claim 10 recites that the portably handheld communication device recited in Claim 1 is a tablet.  *Id.* at 24:13-15.  Claims 11 and 19 recite a wired connection between the onboard recorder and the memory device within the onboard recorder.  *Id.* at 24:16-19, 16:26-29.  Claim 12 recites a "self-test button," which "initiate[s] operability testing" of the onboard recorder, but there is no disclosure in the patent describing how that test would be accomplished.  *Id.* at 24:20-23. Whatever the "self-test button" and "operability testing" are intended to comprise, they would need to be known to a person of ordinary skill in the art in order for the claim to be enabled. Accordingly, even the patentee felt that a self-test button was a conventional component that could not transform the claims into patent eligible subject matter.  All in all, these conventional components do not require any particular configuration or specialized arrangement to perform the claimed abstract ideas and are therefore insufficient to pass the test of an inventive concept. *See Automated Tracking Sols., LLC v. Coca-Cola Co.*, 723 F. App'x 989, 994 (Fed. Cir. 2018); *see also, SAP America*, 898 F.3d at 1170.

Finally, independent Claim 13 recites the elements of Claim 1 but also recites (1) a cable connection to the memory device in the onboard recorder to allow for a wired connection and (2) a self-test button that "enable[s] the vehicle driver to initiate operability testing of said onboard recorder." The '384 Patent at 24:36-38 and 24:66-67. The cable connection is a standard cable connection. As discussed above, no special signal nor even a description of how the self-test button would operate are disclosed in the '384 Patent. Accordingly, the claims of the '384 Patent should be found invalid. *See SAP America*, 898 F.3d at 1167 (Fed. Cir. 2018) (citing *Electric Power*, 830 F.3d at 1353) ("claims focused on 'collecting information, analyzing it, and displaying certain results of the collection and analysis' are directed to an abstract idea").

## V.      CONCLUSION

For the reasons set forth above, this Court should dismiss Plaintiff's Amended Complaint with prejudice.

ASHBY & GEDDES

*/s/ Andrew C. Mayo*

_____

Andrew C. Mayo (#5207)

*Of Counsel:*

500 Delaware Avenue, 8th Floor
P.O. Box 1150

Michael J. Zinna
David G. Lindenbaum
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY  10178
(212) 808-7800

Wilmington, DE  19899
(302) 654-1888
amayo@ashbygeddes.com

*Attorney for Defendant*

Constantine Koutsoubas
KELLEY DRYE & WARREN LLP
333 West Wacker Drive, 26th Floor
Chicago, IL  60606
(312) 857-7070

Dated:  July 1, 2019

{01464436;v1 }