IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INNOVATIVE GLOBAL SYSTEMS, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) C.A. No. 19-641 (MN)<br>KEEP TRUCKIN, INC., )<br>)<br>Defendant. )<br>) | |
| INNOVATIVE GLOBAL SYSTEMS, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) C.A. No. 19-1708 (MN)<br>SAMSARA NETWORKS, INC., )<br>)<br>Defendant. )<br>) | |

**MEMORANDUM ORDER**

At Wilmington this 24th day of March 2020:

As announced at the hearing on February 21, 2020, IT IS HEREBY ORDERED that:

1. Keep Truckin, Inc.'s ("Keep Truckin") Motion to Dismiss for Failure to State a Claim (D.I. 9 in C.A. No. 19-641) is DENIED.

2. Samsara Networks, Inc.'s ("Samsara") Motion to Dismiss for Failure to State a Claim (D.I. 7 in C.A. No. 19-1708) is DENIED.

Defendants moved to dismiss the operative complaints in each of their actions pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that the claims of U.S. Patent Nos. 8,032,277 ("the '277 Patent") and 10,157,384 ("the '384 Patent") are invalid as claiming ineligible subject matter under 35 U.S.C. § 101. In its motion, Samsara also seeks dismissal of Plaintiff's

allegations of direct infringement and pre-suit inducement of the '277 Patent under Rule 12(b)(6) as insufficiently pleaded under the standards of *Iqbal* and *Twombly*. Defendants' motions were fully briefed as of January 28, 2020,[1] and the Court received further submissions in both cases regarding which Supreme Court or Federal Circuit case each party contends is analogous to the claims at issue in Defendants' motions as related to the § 101 arguments. (*See, e.g.*, D.I. 18, 23, 24 in C.A. No. 19-641). The Court carefully reviewed all submissions in connection with Defendants' motions, heard oral argument[2] and applied the following legal standard in reaching its decision:

I. **LEGAL STANDARDS**

   A. Motion to Dismiss for Failure to State a Claim

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). "[A] court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (quoting *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014)). Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "[P]atent eligibility can

---

[1] (*See* D.I. 10, 13, 14, 15 in C.A. No. 19-641; *see also* D.I. 8, 16, 17, 21 in C.A. No. 19-1708).

[2] (*See* D.I. 29 in C.A. 19-641; D.I. 33 in C.A. No. 19-1708).

be determined at the Rule 12(b)(6) stage . . . when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

B. Patent-Eligible Subject Matter

Section 101 of the Patent Act provides that anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101. The Supreme Court has long recognized three exceptions to the broad categories of subject matter eligible for patenting under § 101: laws of nature, physical phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). These three exceptions "are 'the basic tools of scientific and technological work' that lie beyond the domain of patent protection." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-78 (2012)); *see also Alice*, 573 U.S. at 216. A claim to any one of these three categories is directed to ineligible subject matter under § 101. "[W]hether a claim recites patent eligible subject matter is a question of law which may contain underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

Courts follow a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217; *see also Mayo*, 566 U.S. at 77-78. First, at step one, the Court determines whether the claims are directed to one of the three patent-ineligible concepts. *Alice*, 573 U.S. at 217. If the claims are not directed to a patent-ineligible concept, "the claims satisfy § 101 and [the Court] need not proceed to the second step." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018). If, however, the Court finds that the claims

3

at issue are directed a patent-ineligible concept, the Court must then, at step two, search for an "inventive concept" – *i.e.*, "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 573 U.S. at 217-18 (alteration in original) (quoting *Mayo*, 566 U.S. at 72-73).

1. Step One of the *Alice* Framework

At step one of *Alice*, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (step one looks at the "focus of the claimed advance over the prior art" to determine if the claim's "character as a whole" is to ineligible subject matter). In addressing step one of *Alice*, the Court should be careful not to oversimplify the claims or the claimed invention because, at some level, all inventions are based upon or touch on abstract ideas, natural phenomena, or laws of nature. *Alice*, 573 U.S. at 217; *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016). "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

2. Step Two of the *Alice* Framework

At step two of *Alice*, in searching for an inventive concept, the Court looks at the claim elements and their combination to determine if they transform the ineligible concept into something "significantly more." *Alice*, 573 U.S. at 218; *see also McRO*, 837 F.3d at 1312. This second step is satisfied when the claim elements "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Berkheimer*,

4

881 F.3d at 1367 (citation and internal quotation marks omitted); *see also Mayo*, 566 U.S. at 73. "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Whether claim elements or their combination are well-understood, routine, or conventional to a person of ordinary skill in the art is a question of fact. *Berkheimer*, 881 F.3d at 1368.

At both steps of the *Alice* framework, courts often find it useful "to compare the claims at issue with claims that have been considered in the now considerably large body of decisions applying § 101." *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, C.A. No. 17-965-LPS-CJB, 2018 WL 4660370, at *5 (D. Del. Sept. 28, 2018) (citing *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016)); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

C. <u>Pleading Direct Infringement</u>

Liability for direct infringement arises under 35 U.S.C. § 271(a) when a party, without authorization, "makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." The activities set forth in § 271(a) do not result in direct infringement unless the accused product embodies the complete patented invention. *See Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 & n.2 (Fed. Cir. 2000). Therefore, to state a claim of direct infringement sufficient to withstand a motion to dismiss, a plaintiff must plead facts that plausibly suggest that the accused product meets each limitation of the asserted claim(s). *See TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, C.A. No. 17-965-LPS-CJB, 2018 WL 4660370, at *9 (D. Del. Sept. 28, 2018).

The Federal Circuit has provided guidance on pleading direct infringement under *Iqbal / Twombly*. *See generally Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256 (Fed. Cir. 2018). In *Disc Disease*, the Federal Circuit reversed the district court's dismissal of plaintiff's direct infringement claims, finding that the plaintiff's allegations were sufficient under the plausibility standard of *Iqbal* and *Twombly* because the complaint specifically identified the three accused products and alleged that the accused products met "each and every element of at least one claim" of the asserted patents, either literally or equivalently. *Disc Disease*, 888 F.3d at 1260. Following *Disc Disease*, another court in this District similarly found that a plaintiff plausibly pleaded an infringement claim where the complaint specifically identified the infringing product and alleged "that it practices each limitation of at least one claim in" the relevant patents. *Promos Tech., Inc. v. Samsung Elec. Co.*, No. 18-307-RGA, 2018 WL 5630585, at *4 (D. Del. Oct. 31, 2018); *see also AgroFresh Inc. v. Hazel Techs., Inc.*, No. 18-1486-MN, 2019 WL 1859296, at *2 (D. Del. Apr. 25, 2019) (applying *Disc Disease* to find allegations of direct infringement sufficiently pleaded); *DoDots Licensing Sols. LLC v. Lenovo Holding Co.*, No. 18-98-MN, 2018 WL 6629709, at *2 (D. Del. Dec. 19, 2018) (same).[3]

## II.  THE COURT'S RULING

The ruling to deny Defendants' motions to dismiss[4] under Federal Rule of Civil Procedure 12(b)(6) was announced from the bench at the conclusion of the hearing as follows:

> . . . [T]hank you for the arguments today. They were well made and very helpful. I am prepared to rule on the pending motions. I will not be issuing a written opinion, but I will issue an order stating my ruling. As I have done in other cases, before I get to the ruling, I want to emphasize that although I am not issuing a written opinion, we have followed a full and thorough process before making the

---

[3]  The legal standard for direct infringement set forth in this Memorandum Order is derived from the Court's opinions in *DoDots* and *AgroFresh*.

[4]  (D.I. 9 in C.A. No. 19-641; D.I. 7 in C.A. No. 19-1708).

decision I am about to state. There was full briefing on each of the pending motions. There were additional submissions, including those discussing what each party viewed as the most analogous case and there has been oral argument here today. All of the submissions and the arguments have been carefully considered.

Now as to my rulings. I am not going to read into the record my understanding of Section 101 law. I have a legal standard that I have included in earlier opinions, including in *Kroy IP Holdings v. Groupon*, C.A. No. 17-1405-MN. I incorporate that law and adopt it into my ruling today and I will also set it out in the order that I issue.

There are two patents at issue – United States Patent Nos. 8,032,277 and 10,157,384. The '384 Patent is ultimately a continuation-in-part of the '277 Patent and shares some portions of its specification with the '277 Patent. The patents generally relate to devices, methods and systems of recording driver and vehicle activity data from a data bus on a vehicle and logging that activity for uploading or transmitting to another device.

Both Defendants have moved to dismiss pursuant to Rule 12(b)(6), arguing that the asserted claims are directed to patent-ineligible subject matter. Defendant Samsara has also moved to dismiss pursuant to Rule 12(b)(6) for failure to state a claim for direct infringement and for pre-suit inducement. After reviewing the entire record, hearing argument, and applying the law as I understand it, I am going to deny the motions.

First, I want to address representativeness of the claims discussed. All parties agree that claim 1 of the '384 Patent is representative of that patent.

[Claim 1 of the '384 Patent recites:

1. An onboard electronic system for logging and reporting driver activity and operation data of a vehicle, said system comprising:

an onboard recorder adapted for continuously connecting to a data bus of the vehicle to continuously monitor, obtain and calculate vehicle operation data comprising mileage data, engine use data, time the engine is turned off, speed of the vehicle, and time the engine remains on while the vehicle is not moving, and said onboard recorder comprising a processor, a transmitter, and a memory device for

7

recording and storing said vehicle operation data;

said transmitter adapted for transmitting said vehicle operation data from said onboard recorder to a portable handheld communications device;

data processing software operable on the handheld communications device comprising a processor and a display, said data processing software utilized to generate a hours of service log using said vehicle operation data continuously monitored, obtained and calculated from the data bus of the vehicle, and to present the hours of service log in a grid form on the display, the hours of service log comprising a driver's total hours driven today, total hours on duty today, total miles driven today, total hours on duty for seven days, total hours on duty for eight days, and the driver's changes in duty status and the times the duty status changes occurred, whereby the driver's hours of service log is applicable for comparison to a hours of service regulation to determine a compliance status of the driver; and

a compliance signal emitted by said transmitter and indicating whether said onboard recorder is functioning to record vehicle operation data needed to generate the driver's hours of service log, such that the compliance status of the driver can be accurately determined, and in the event of a malfunction of said onboard recorder, said compliance signal is adapted for activating a visual indicator to the driver signifying an out-of-compliance condition of said onboard recorder.]

All parties agree today that claims 1 and 2 of the '277 Patent are representative of that patent. . . . I will use those as representative claims [of that patent].

[Claims 1 and 2 of the '277 Patent recite:

1. An onboard electronic system for logging and reporting driver activity and operation data of a vehicle, said system comprising:

8

a memory device configured to store operating data;

a power supply;

a first interface configured to connect to a vehicle mileage sensing system;

a second interface configured to connect to a data bus of the vehicle;

a receiver configured to link with a global navigation satellite system;

at least one data portal configured to upload data from the memory device to a receiver external to the vehicle using a wireless telecommunications network, and supporting a connection with a receiver external to the vehicle and under control of authorities;

a driver interface configured to record driver identification information input by a driver of the vehicle and duty status input by the driver;

a processor operatively connected to the memory device for processing encoded instructions and recording data selected from a group consisting of operating data, an hours of service log, and a fuel tax log; and

a display.

2. A method for logging and reporting driver activity and vehicle operation, comprising: identifying a driver of a vehicle;

recording operating data with an electronic device operatively connected to a data bus of the vehicle, coupled to a vehicle mileage sensing system, and linked to a global navigation satellite system, the operating data being selected from a group consisting of mileage obtained from at least one of the vehicle mileage sensing system and the data bus; engine use, time, and date obtained from the vehicle data bus; and location, time, and date obtained from the global navigation satellite system;

recording a duty status of the driver;

>> creating an hours of service log comprising data selected from a group consisting of a change in duty status of the driver, time and date the change occurred, hours within each duty status, total hours driven today, total hours on duty for seven days, and total hours on duty for eight days; and

>> automatically uploading the hours of service log to a receiver external to the vehicle using a wireless telecommunications network.]

Next, I turn to step 1 of *Alice*. In the briefs, Defendants argued slightly different variations of what they contend the abstract idea of the patents is. Today, they asserted the abstract idea is "driver activity and vehicle operation logging and reporting." And that is the abstract idea being asserted for both patents.

Defendants argue that the claims are like those found in *Electric Power Group v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016), which was directed to methods and systems for detecting events on power grids in real time by receiving and analyzing data from various sources and detecting/analyzing events based on certain measurements and displaying the event analysis and diagnosis.

Innovative Global argues that the '277 and '384 Patents are not directed to an abstract idea but instead to a "specially adapted system to achieve . . . results" and emphasizes the physical aspects of the claims and the connections required.[5]

Innovative Global also argues that the '384 Patent claims a technical solution to a technical problem because the components continuously connect to the data bus of the vehicle.[6]

As to the '384 Patent, the Court agrees with Innovative Global that claim 1 is not directed to the abstract idea of logging and recording data, but rather to a particular onboard system for a vehicle that continuously monitors certain data from the vehicle data bus and generates a log indicating compliance status of a driver. And because the parties all agree that claim 1 is representative of that patent, this conclusion applies to all claims. Despite Defendants' arguments to the contrary, the claims are not like those

---

5   (D.I. 13 at 10 in C.A. No. 19-641).

6   (D.I. 13 at 11 in C.A. No. 19-641).

in *Electric Power*. The focus of those claims was a method of monitoring power grids, detecting events and presenting an analysis of those events – not any inventive or improved technology for doing so. In the Court's view, Defendants have oversimplified the claims of the '384 Patent and characterized them at an improperly high level of abstraction, in contravention of the Federal Circuit's instruction in *McRO* and *Enfish*.[7] Here, the focus of the '384 Patent claims is an onboard system that physically exists and uses tangible components specifically adapted to continuously monitor certain data from the vehicle data bus, analyze that data to generate a compliance status and signal for a driver based on hours of service and transmit that data to a portable device. This is not an abstract idea.

Additionally, preemption was not raised here today, but it was addressed by Samsara in its briefing. I find that the claims of the '384 Patent do not preempt the entire field of "collecting, analyzing and displaying driver and vehicle data," as Samsara argues in its briefs. For example, the '384 Patent invention requires a compliance signal to indicate whether the onboard recorder is functioning properly to generate the driver's hours of service log. This is just one of the limitations present in the '384 Patent that grounds the invention more narrowly and avoids preemption.

Because I find that the '384 Patent claims are not directed to an abstract idea, I do not reach step 2 of the *Alice/Mayo* inquiry. For that I cite to *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356, 1363 (Fed. Cir. 2018).

The '277 Patent, however, is somewhat different. Claims 1 and 2 are directed to something more generic than what is claimed in the '384 Patent. But whether the '277 Patent claims fall within the realm of abstract ideas is something that I am struggling with. These claims are more like those found abstract in *Electric Power*, with more of a focus on the result of driver activity logging and reporting. And read in context of the problem described in the '277 Patent – that it was expensive and time-consuming to do this manually – the invention does seem to be largely about using computers to more efficiently do something that was previously done by hand.[8] That being said, there is specificity in some of the limitations in claims 1 and 2 that suggest the focus of these claims is something more concrete than the mere abstract idea of logging

---

7   *See McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).

8   (*See, e.g.*, '277 Patent at 1:27-62).

and recording driver activity. Thus, when the claims are considered as a whole and based on the current record, the Court cannot agree with Defendants. It may be that further proceedings and a more developed record lends clarity to this issue, but Defendants have failed to show at this stage that the claims are directed to an abstract idea.

As I have done before, I will follow a similar tack to that used by Judge Bryson sitting by designation in Texas. He denied a motion to dismiss because defendants failed to persuade him the claims were directed to an abstract idea, but he left open the possibility that a more developed record could prove helpful. That's *IDB Ventures, LLC v. Charlotte Russe Holdings, Inc.*, No. 2:17-660-WCB-RSP, 2018 WL 5634231, at *5 (E.D. Tex. Oct. 31, 2018).

Given that Defendants have not persuaded me on this record that the claims of the '277 Patent are directed to an abstract idea, I again need not reach step 2 of the *Alice/Mayo* analysis. And I will deny the motions to dismiss based on Section 101.

Finally, I turn to the remaining issues Samsara has raised. Samsara moves to dismiss the claims of infringement – presumably direct infringement – of the '277 Patent on the grounds that the independent claims are Markush claims reciting groups consisting of certain data and the exhibits attached to the complaint demonstrate that the accused products collect additional data beyond that recited in the claims. Samsara is essentially asking the Court for a ruling of non-infringement at the motion to dismiss stage.

Innovative Global argues that, at the very least, claim construction is necessary before the Court can reach a decision on this issue, but Innovative Global really only raises this for claim 1. The Court agrees with respect to claim 1 – construction of the term "operating data" is required before the Court can determine whether Samsara's product infringes. That is not something that should happen on a motion to dismiss, nor will it here.[9]

As to claim 2 of the '277 Patent, which claims "operating data being selected from a group consisting of" various recited data types, Innovative Global attempts to argue that aspects unrelated to the claimed invention are not excluded by closed Markush claims. The Federal Circuit has characterized the use of the "consisting of"

---

9      *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349 (Fed. Cir. 2018) ("But Defendants' arguments boil down to objections to Nalco's proposed claim construction for 'flue gas,' a dispute not suitable for resolution on a motion to dismiss.").

language in Markush claims as creating a strong presumption that unrecited elements are excluded – that is, they are closed claims. That's *Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*, 831 F.3d 1350, 1358 (Fed. Cir. 2016). That presumption, however, can be rebutted, and the inquiry often examines the specification and prosecution history. This analysis is an exercise that should occur at claim construction, not on a motion to dismiss where the Court is to construe claims in Innovative Global's favor.[10]

As to pre-suit inducement, I understand that that issue has been resolved. Pre-suit inducement is not an issue in this case. To the extent that Plaintiff later decides to assert pre-suit inducement, Plaintiff must request leave to amend its complaint consistent with the scheduling order entered in this case and the Court's procedures.

In sum, Samsara's motion to dismiss as related to *Iqbal*/*Twombly* issues is denied for the reasons just stated.

_____
The Honorable Maryellen Noreika
United States District Judge

---

10   *See Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016) ("As explained above, construed in favor of BASCOM as they must be in this procedural posture, the claims of the '606 patent do not preempt the use of the abstract idea of filtering content on the Internet or on generic computer components performing conventional activities.").